THE CHICAGO BAR ASSOCIATION *et al.*, Plaintiffs-Appellees, *v.* THE COUNTY OF COOK *et al.*, Defendants-Appellants (Michael E. Lavelle *et al.*, Defendants).

First District (1st Division)   No. 84—890

Opinion filed May 17, 1984.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey, Henry A. Hauser, and Susan Condon, Assistant State's Attorneys, of counsel), for appellants.

Kevin M. Forde, Chester R. Davis, Arnold Flamm, Michael Padden, Sharon Finegan Patterson, James C. Spangler, and John F. McCarthy, all of Chicago, for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs, the Chicago Bar Association and four individual real estate taxpayers in Cook County brought the instant declaratory judgment action challenging the authority of the Cook County Board of Commissioners to enact an ordinance altering the Cook County Board of Appeals. The ordinance, enacted on June 6, 1983, added a third commissioner to the Cook County Board of Appeals, staggered the terms of the present two commissioners, changed the manner of election of the present commissioners from an at-large election to an election from the city of Chicago and from suburban Cook County respectively and provided for the board to elect from its members a chairman whose powers may be determined by law or by board rule. The circuit court held that the ordinance is invalid and unconstitutional and enjoined any election pursuant thereto. Defendants, the county of Cook and Stanley T. Kusper, county clerk[1], appeal, contending that the subject ordinance is authorized by the county's home rule powers under article VII, sections 4(c) and 6, of the Illinois Constitution (Ill. Const. 1970, art. VII, secs. 4(c), 6), and does not otherwise violate article IX, the revenue article, of the Illinois Constitution (Ill. Const. 1970, art. IX, sec. 4). This court has agreed to consider an expedited appeal of this matter.

Article IX of the Illinois Constitution provides for the State's collection of revenue by taxation. Section 4(a) of that article states that "taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law." (Ill. Const. 1970, art. IX, sec. 4(a).) Section 4(b) further provides that "[s]ubject to such limitations as the General Assembly may hereafter prescribe by law, counties with a population of more than 200,000 may classify

---

[1] Additional defendants, the Chicago Board of Election Commissioners, have not taken a position on the constitutionality of the ordinance.

or to continue to classify real property for purposes of taxation." Ill. Const. 1970, art. IX, sec. 4(b).

Consistent with this grant of authority, the legislature has enacted the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 482 *et seq.*). Under the real estate taxation plan established by the Revenue Act, a taxpayer in Cook County who is dissatisfied with the assessment of his property can seek review of the assessment through a written objection to the assessor. (Ill. Rev. Stat. 1983, ch. 120, par. 578.) After the assessor responds to the taxpayer's complaint, an aggrieved taxpayer may appeal the assessment to the board of appeals. Ill. Rev. Stat. 1983, ch. 120, par. 593 *et seq.*

The Cook County Board of Appeals is established by section 11 of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 492). That section provides that the board of appeals shall consist of two commissioners elected for a term of four years. In the case of a vacancy, the chief judge of the circuit court or judge he so designates, shall appoint someone to fill the vacancy until the next county election. The board of appeals may alter an assessment upon complaint of a taxpayer (Ill. Rev. Stat. 1983, ch. 120, par. 597), but "no order for a correction of any assessment shall be made unless both commissioners *** concur therein ***" (Ill. Rev. Stat. 1983, ch. 120, par. 599). Any order of the board must be made in an open session and entered of record, including a brief written statement of the reason for any change of an assessment. An aggrieved taxpayer may further appeal an assessment of his property to the circuit court. (Ill. Rev. Stat. 1983, ch. 120, pars. 675, 716.) The circuit court will consider altering an assessment only in those cases where the taxpayer can demonstrate that a constructive fraud has occurred. *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 312 N.E.2d 252.

Once an assessment is made, taxes are collected by the county treasurer, who acts as *ex officio* collector for the various local taxing units. (*City of Joliet v. Bosworth* (1976), 64 Ill. 2d 516, 531, 356 N.E.2d 543, 551.) The taxes collected by the treasurer are then distributed to the various taxing bodies levying taxes on property situated in Cook County. Plaintiffs have represented that there are 570 separate bodies levying taxes on Cook County real estate. Of these taxing bodies, 43 are municipalities which are themselves home rule units.

On June 6, 1983, the Cook County Board of Commissioners adopted Ordinance No. 115923 to make various changes in the structure of the Cook County Board of Appeals. The ordinance states:

"Pursuant to the authority granted to the County of Cook as a

Home Rule Unit by the 1970 Constitution of the State of Illinois, the provisions of this ordinance shall supersede Sections 11, 116 and 118 of the 'Revenue Act of 1939', filed May 17, 1939, as amended (Ill. Rev. Stat. 1981, Ch. 120, Pars. 492, 597 and 599)."

The ordinance is similar to the superseded sections of the Revenue Act of 1939 with the following alterations. The ordinance provides for the addition of a third member to the board to be elected at-large by the voters of the entire county in the November 1984 election. In November 1986 the positions of the two present commissioners shall be open for election. At that time one commissioner shall be elected by the county voters within the city of Chicago and one shall be elected by the county voters outside the city of Chicago. The three members of the board shall elect from their number a chairman whose duties and powers will be determined by law or by board rule. In the case of any vacancies, the ordinance provides that the County Board of Commissioners shall appoint a suitable person to fill the vacancy for the remainder of the term. Decisions of the board of appeals to correct any assessment shall be made if two of the three commissioners concur therein.

The ordinance specifies that it was enacted pursuant to the authority granted to the county of Cook as a home rule unit by the 1970 Constitution of the State of Illinois. Article VII, section 6(a) of the Constitution provides that a county which has a chief executive officer elected by the county voters is a home rule unit. As a home rule unit, Cook County is given the authority to "exercise any power and perform any function pertaining to its government and affairs." (Ill. Const. 1970, art. VII, sec. 6(a).) This authority is limited by the provisions of section 6 which includes the following limitation, "A home rule unit shall have the power subject to approval by referendum to adopt, alter or repeal a form of government provided by law." (Ill. Const. 1970, art. VII, sec. 6(f).) Section 6(f) also places further restrictions on Cook County's power to change the method of election of its board of commissioners.

Plaintiffs filed the present action on June 6, 1983, charging that the ordinance is unconstitutional. Defendants filed a motion to dismiss the complaint which was denied. The court, after considering memoranda and oral arguments by the parties, held that Ordinance No. 115923 is invalid and unenforceable. The court permanently enjoined defendants from proceeding with any election authorized by the ordinance.

■ The first question to be considered is whether the County of

Cook has authority to establish by ordinance a third commissioner on the board of appeals under section 6(a) because the assessment of real estate pertains to its government and affairs. Defendants assert that the commissioners of the board of appeals are county officials and that historically the assessment process has been performed at the county level. Board commissioners are county residents, elected by voters in the county, and paid out of the county treasury. Plaintiffs contend that the assessment, collection and distribution of real property taxes pertains to and affects the government and affairs of not only the county, but also a multitude of taxing bodies that levy taxes on real estate situated in Cook County. Plaintiffs have cited the following statistics, with which defendants agree. Of the total 1982 real estate taxes collected in the city of Chicago, 91.85% went to taxing bodies other than Cook County. Of the 1982 real estate taxes collected throughout Cook County, 90.87% went to government units and local taxing bodies other than the county.

Plaintiffs contend that the ordinance in question is unconstitutional for the same reasons as the Cook County ordinance held unconstitutional in *Bridgman v. Korzen* (1972), 54 Ill. 2d 74, 295 N.E.2d 9. The ordinance in *Bridgman* sought to alter the real estate tax collection plan required by the Revenue Act from a twice-a-year collection plan to a four-times-a-year collection plan. The court stated that "[a]lthough obviously there are powers and functions of county government which pertain to its government and affairs within the contemplation of article 6 ***, the collection of property taxes is not one of them." (54 Ill. 2d 74, 78, 295 N.E.2d 9, 11.) The court reasoned that in the collection and distribution of taxes the county acts both for itself and for the other taxing bodies which levy taxes on real property located within the county. The collection function does not pertain to the county's government and affairs to any greater extent than it pertains to the government and affairs of the other taxing bodies for whose benefit the county acts. The court concluded that the ordinance was not within the county's home rule authority.

Defendants attempt to distinguish *Bridgman* by the fact that the ordinance in the case at bar pertains to the assessment rather than the collection of real property taxes. Further, defendants argue that *Bridgman*, as well as other decisions under section 6 (*County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 389 N.E.2d 553; *Allen v. County of Cook* (1976), 65 Ill. 2d 281, 357 N.E.2d 458; *Ampersand, Inc. v. Finley* (1975), 61 Ill.-2d 537, 338 N.E.2d 15), employs a "balancing" analysis when reviewing a challenge to an ordinance based upon competing or concurrent governmental interests. Plain-

tiffs contend that none of the cases cited by defendants supports their position that a dominant interest test should be used to determine whether a matter "pertains to" a home rule unit's government and affairs and that, even were such a test employed, the county does not have a dominant interest in the assessment of property taxes.

We recognize the mandate contained in section 6(m) of article VII of the Illinois Constitution that "[p]owers and functions of home rule units shall be construed liberally." (Ill. Const. 1970, art. VII, sec. 6(m).) Courts of our State have not hesitated, however, to strike down home rule ordinances where it is determined that the ordinances do not pertain to the government and affairs of a local unit. (*Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 338 N.E.2d 15; *Cummings v. Daley* (1974), 58 Ill. 2d 1, 317 N.E.2d 22; *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 317 N.E.2d 3; *Bridgman v. Korzen* (1972), 54 Ill. 2d 74, 295 N.E.2d 9.) After reviewing the pertinent constitutional provisions and decisions of the supreme court, we conclude that Cook County does not have authority under its home rule powers to enact the subject ordinance.

Defendants' attempt to distinguish the present ordinance from the ordinance found invalid in *Bridgman* must fail. If collection of property taxes does not pertain to the government and affairs of the county, surely the assessment of those taxes which requires a greater use of discretion, also does not pertain to the county's affairs. The assessment of a tax is an important phase in any taxing scheme leading from the imposition of a tax rate to the collection and distribution of the tax monies. The distinction between the collection and the assessment functions is not sufficient to avoid application of *Bridgman* to the case at bar.

Contrary to defendants' argument, the establishment of procedures for the assessment of real estate tax has historically been a matter for the legislature. In *People ex rel. Green v. Board of Commissioners* (1898), 176 Ill. 576, 52 N.E. 334, the supreme court held that the Illinois Constitution of 1870 gave to the legislature the task of establishing an assessment review system. The Revenue Act of 1939 maintains the General Assembly's authority over the assessment of property. (Ill. Rev. Stat. 1983, ch. 120, par. 482 *et seq.*) The method of assessment and review established by the Revenue Act for Cook County has been upheld as constitutional in *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 312 N.E.2d 252. The fact that the board of appeals commissioners are elected at the county level is a feature of the State statutes and cannot be used to demonstrate a source of power for the county to supersede these same statutes.

Further, we find that defendants have not shown any support for their argument that the county's interests predominate over the interests of the other 569 taxing bodies dependent on the tax monies assessed and collected from property in Cook County. As in *Bridgman*, "the county acts both for itself and the other taxing bodies authorized to levy taxes on property within the county, and the function thus performed does not pertain to its government and affairs to any greater extent than to the government and affairs of the other taxing bodies for whose benefit it acts." *Bridgman v. Korzen* (1972), 54 Ill. 2d 74, 78, 295 N.E.2d 9, 11.

■ Defendants next contend that the ordinance is authorized by article VII, section 4(c) of the 1970 Constitution. Section 4(c) provides in part: "Each county shall elect a sheriff, county clerk and treasurer and may elect or appoint a coroner, recorder, assessor, auditor and such other officers as provided by law or by county ordinance." (Ill. Const. 1970, art. VII, sec. 4(c).) Defendants contend that the ordinance in question is an attempt to provide for an additional county officer on the board of appeals under Section 4(c).

Section 4(c) applies to both home rule and non-home-rule counties. The committee proposal of the local government committee to the Constitutional Convention stated that section 4(c) would "permit the selection of other county officials by ordinance *** comparable to the existing statutory power of municipalities to create additional officers without specific legislative authorization. (See Ill. Rev. Stat., ch. 24, secs. 3—4—19, 3—7—1 (1969).)" (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1706-07 (hereinafter cited as Proceedings).) Defendants seek to establish the constitutionality of the ordinance regardless of whether its home rule authority supports it by arguing that in creating the office of the third commissioner the county has not acted to modify the rules governing the assessment procedures but has merely provided for an additional county office. We find this argument to be misleading. In addition to creating a third commissioner, the ordinance permits a change of an assessment to occur upon the vote of two of the three commissioners rather than upon their unanimous vote. This dilution in voting strength of the present two commissioners as well as other changes made by the ordinance constitute material alterations in the assessment process established by the legislature. In light of these changes the constitutionality of the ordinance cannot rest solely on the county's authority under 4(c) but must also be buttressed by its home rule powers. Having determined that the ordinance is not supported by the county's home rule powers, the county's authority to create new offices does not

save the ordinance.

■ Lastly, defendants contend that the subject ordinance does not conflict with the provisions of the Revenue Article (Ill. Const. 1970, art. IX). Although we need not reach this issue, we note that the provisions of article IX clearly give the General Assembly the authority to enact a uniform system of property tax assessment. Section 4(a) states that "taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law." (Ill. Const. 1970, art. IX, sec. 4(a).) This provision shows an express desire on the part of the framers of the constitution for a uniform system of tax assessment. See 3 Proceedings 1892, 2029.

The language of section 4(a), like its predecessor section 1 of article IX of the 1870 Constitution, specifically refers to the General Assembly as the body that is to determine how the valuation of property shall be ascertained. In interpreting this provision in the 1870 Constitution, *People ex rel. Green v. Board of Commissioners* (1898), 176 Ill. 576, 586-87, 52 N.E. 334, 338, recognized that section 1 of article IX "commits the whole matter of determining how property shall be assessed for taxes to the discretion of the General Assembly." *Green* further stated that:

"The power to direct in what manner the assessments for taxes shall be made, and to designate the officers who shall make such assessments, is conferred on the legislature by the constitution, and the exercise of this power is not restricted in any way." (176 Ill. 576, 589, 52 N.E. 334, 339.)

Article IX, section 4(a) of the 1970 Constitution is substantially similar to article IX, section 1 of the 1870 Constitution. It has been held that re-enactment of a constitutional provision after it has been construed represents approval of the prior interpretation. (*Williams v. Crickman* (1980), 81 Ill. 2d 105, 405 N.E.2d 799.) Additionally, in *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 329, 312 N.E.2d 252, 258, the supreme court observed that "[u]nder section 4(a) of article IX of the 1970 Constitution it is the *General Assembly* which has the authority to determine how and *by whom the valuation of the property shall be ascertained.*" (Emphasis added.) The ordinance at issue clearly runs afoul of the exclusive legislative authority suggested by *La Salle.*

After oral arguments were had in this case, defendants cited *In re Objection of Cook to Referendum Petition* (1984), 122 Ill. App. 3d 1068. *In re Cook* involved consideration of whether a county could change by countywide referendum the manner of selection of the office of supervisor of ·assessments from an appointed office to an

elected office. The court found that section 4(c), which states in part, "Any office may be created or eliminated and the terms of office and manner of selection changed by county-wide referendum" (Ill. Const. 1970, art. VII, sec. 4(c)), is a limitation on legislative power in the revenue area and expressly allows county voters to change the manner of selection of county officers. We are not persuaded that *In re Cook* affects the determination of this case since the ordinance at issue attempts to change by vote of the Cook County Board far more than the manner of selection of the two existing board of appeals commissioners.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.